Argument today, August 2nd, 2018, is case number 17-6032, N. Ray, Aaron R. Kemp, etc., Aaron R. Kemp v. U.S. Department of Education Good morning, folks. We have the members of the Department of Education case here to support us. Solzer for the appellant. Yes, Your Honor. Order. You may proceed. We're Solzer for the appellant, Aaron R. Kemp. We're here today on this case to determine whether the defendant supports failure to discharge this appellant's new loans. It's contrary to the bossing we created as a defendant, the underparts of the provision. The standards of review are to know the law and clear error for the facts. In this case, the defendant has supplied, which would be on page 50-162 of the transcript, that she has expenses for cell phone, cable, and internet. The cell phone bill is paid in per ausem. The cable and internet is paid in pops. That's also reflected on her 2016 tax return, which was internet evidence. It is also reflected on her bank statements, which were internet evidence. The, um, there, there's, there's no serious doubt that these expenses are the candidate for disputes. But the court failed to consider those expenses. The court did not disallow these expenses. It simply failed to account for or consider $3 of expenses, cable, internet, and cell phones. The, the appellant listed those expenses. If they're on the budget, she listed a net as expenses. But the bankruptcy court concluded that her budgetary surplus of $105 means she had the ability to pay $105 for her debt. So the, the over, the failure to account for $300 is a very significant error. Um, it, it's, the, this court should be, come away with a firm conviction that an error was made. And just because of that error, because under the court's own calculation, once you add up the expenses, she's in the negative. Has no ability to pay. That's. Which is relevant only to the current, the present circumstances, correct? Yes, Your Honor. Currently. The best involves past, present, and future financial resources, correct? Yes, Your Honor. And the, the future, the, the best way to predict the future, the, the really, the only starting point for the current situation. So under the court's own calculation, currently, once you add up the $300 in, she has no ability to pay. And in fact, she's on a zero payment. I'll be honored. The court, the, the, the accountant has a child care business. The court concluded on page 5 of the opinion that the total expenses, it, it, it, it didn't consider paying the money themselves. But the expenses for food and gas total $230 a month. They, they, they said there was a closing of $900 and that the net in the business was $670. So $230 a month of expenses. $230 times 12 is $2,760. In, in, in that same paragraph, the court says that the debtor spends $25 a day in the summer for, for the two kids she has in the summer. Counsel, were all of these numbers included on the amended budget that was submitted to the court just prior to trial? No, ma'am, they were not. It was a net. So let me ask you this then. On the tax returns, it seems that there's an argument that because there are deductions on the tax return, that reduced the overall taxable net income to the business. Yes, ma'am. And that's what should be utilized in this test, which is really more of a cash basis. So I'm trying to understand what failure or what error they could have supported, engaged in, where they did not use the deduction model formula, but rather just used cash in and cash out. Judge, I mean, they, they, they didn't consider the, the self-management payment at all. If they didn't include it in the budget, why would the court consider it? Because, because what, what happened is that the debtor was at net income of $100. The court's calculation then was $670, six times what's on the budget. And the debtor testified that she, what's on the, what's on the budget is net income, meaning gross income minus expenses. That, that is what's on the budget. But was she using it off the tax return? Was that where she got the net income figure? The net income in the 2016 tax is $564 in the business, I believe, for the year. So her, her figure was $100, which means, you know, less than $100 a month. So what is it, $100 or $300? Don't we have to apply either the net income from one place or another? It seems like you're double-dipping us. I don't think we are. One way you can do it is look at the gross income, which under the court's calculation is $900. The debtor testified that this year it may be a little more, so it may be $1,000 a month. And then the business expenses, which are food, gas, cell phone, internet, cable, and deductibles. It looks to me like going forward, you know, the reason why it's less than $200 a month. The $100 a month was based on the 2016 tax. But under the court's analysis, $1,050 is spent just on food in the summer, meaning 38% of the total expenditures are just for food in the summer. And what that leaves you with is under the court's analysis, she's spending $190 a month for the other nine months for food and gas, which seems there's no basis for that differential. Judge Schoeding, in her dissent in the first case, felt that the team noted that the court is not allowed to make unsupported adjustments to the budget. And just looking at the figures for the business expenses for food and gas, I don't think it's unsupported. That seems to be a clear barrier. I think it's important when we're talking about the probabilities here that we keep in mind that evidentiary standards are just preponderance of the evidence, the typical standards of the cases. Which means, essentially, more likely than not, so we're not talking about possibilities, we're talking about probabilities. I mean, it's possible the debtor put in the lottery report, or marry a billionaire, it's also possible she'll be out on the street, but those aren't probabilities. And so the debtor testified that she's in the process of buying a house that's on the 99th day of the transfer. That will result in an increased maintenance expense and utility expense. How is she going to do that in her budget statement? Your Honor, she testified that she would have to borrow the down payment from her mother, and she also testified that the mortgage payment would be essentially the same as the rental payment. The most she could afford is a $9,000 house that the government sells to be an H&E loan. Although it doesn't appear that she would pay for a car or a house based on her current budget, but she is in the process of finding that house. The court allowed an expense for anticipated car payment, but it didn't factor in which the debtor testified to, and it's common knowledge that when you're financing a car, you have to have full coverage. That testimony is on page 167 of the transcript. Her auto insurance expense will go up. She also testified that she'd like to take a vacation, and talk to this mom about her calling a vacation, but she allotted $50 to go on a weekend trip to a nearby location, which, you know, that comes to $600 in a year, and the court disallowed that expense. That may have been just a semantic objection. The debtor spends $150 for transportation, so if that had been lodged for transportation, it definitely would have been okay. The debtor spends $50 on her payment, but the court would not allow her to take, if she has a 13-year-old daughter, to take a weekend trip to Tulsa or Branson or somewhere close to the south of Branson. I would also like to say that... So, yeah, you're still talking solely about the present financial circumstance? Yes, Your Honor. Also, she's testifying that she doesn't have the money to take a vacation, which is apparent in the budget. She's in the negative. But it's still her present financial circumstance. Yeah, the present financial... If it became available, she would wisely make her daughter somewhere south of Branson once a month, or once a year. But does that desire override the requirement that she may be given on her student loans? I mean, I understand that vacations and family time is important, and I'm not suggesting that they're not, but I think that the court's in a position where they have to make decisions based on, you know, what may happen in the future and what's, you know, necessary for a minimum standard of living. And if her daughter, you know, goes to college in four years and she's going to get her full scholarship, maybe she'll work full-time on loans. Why should that not be taken into consideration as well as the current income? That's what the test requires. It should be, Your Honor. The fact that her daughter will go to college, probably, and that she will return to work full-time on loans should absolutely be taken into consideration. The point on the vacation is she spends $150 on transportation, $50 on entertainment. If she had $100 on entertainment or $200 on transportation, presumably that would have been okay. Because those are very low expenses. I would also like to point out that the standard is the totality of the circumstances. And what this court does is when they consider an expense, if they adjust an expense or disallow an expense, according to the court, if so, that results in an ability to pay in the amount of that expense. And that is not a totality. That is what I would call a charitable amount. This court considered a case in 2010, the Walker case. The Debra Mann case, the $850 car payment, and also had a $300 some-odd payment for a second mortgage. If you don't consider the totality of what this court said and suggest you don't like those expenses, but consider the total situation, they're going to stand. If you don't consider the totality, you may end up with a wide, arbitrary range of results. You'll have a situation where one debtor can't spend $200 on transportation, but another debtor could have a $700 car payment. Are the facts in the Walker case really distinguished from the facts in the Sears case? Yes, they are. I believe the facts on the Sears case are very distinguished from the facts in the Sears case. But my point is, if you don't look at the total expenses, you'll end up with a very wide range of arbitrary results. The court should look at the total amount of expenses, which in this case are very low. And if you don't, it's not a totality. The court would definitely, if the debtor had two jobs, they would just consider one. That's not a totality. So the same rule should apply to this case. I think your argument goes kind of both ways. I think what the debtor did was look at the totality because of the past financial circumstances and her future potential financial circumstances, not just her cable debt or her cell phone debt. So it's not like what we are arguing is exactly what the debtor did. Look at the totality of the financial circumstances past, present, and future. Judge, my point is that for expenses, if a court just allows a transportation expense, that is a fact that should result in an increased ability to pay without considering the totality of the expenses. Otherwise, more brutal debtors are penalized. And then if you don't give a fundersending for what you're arguing is essentially a subset of the totality of the circumstances case, this would apply. You're talking about applying only to the income and expense analysis. So that when we look at the totality, it would almost be like the totality of the expenses test within the totality of the circumstances test as opposed to things other than the income. Yes, Your Honor. I suppose it should apply to both income and expenses as a totality. Your Honor, I'm not going to yell a lot at you because I have the rest of the time for both. Thank you. Thank you. So we're just going to read. Thank you ladies and gentlemen. Good morning. I'm going to show you this card. I'm going to read it for you today. I'm going to read this stuff for you. I'm going to present it to you as it is. Your Honor, the debtor brings three main issues. And those three main issues revolve around the debtor. The debtor did talk about his calculation of the potential for a hearing in May. And I believe that this court was satisfied with the hearing in May. And I believe that there is going to be a hearing in the past two days. As to the debtor's three main issues that he brings on the field, first is whether or not there's an open question to this circuit as to the standard that should be applied, whether or not the debtor, on the day of trial, can make payments on the student loan or can pay off the entire student loan debt. Second, that there's an open question as to whether or not there should be given a dispositive effect as to the eligibility and enrollment in an IPL. Third, that this court's rule that there is no IPL payment is not a payment. I will briefly summarize the United States' response to each one of those points and go into detail as to each one of those factors and why they are confounded, why there is no open question in this circuit, or a problem with this issue in general. Number first, there is no open question in this circuit that there is not a dispositive effect given to the factor of being enrolled in an income-based or independent IPL. As you stated, Judge Shogin, firm, you stated that in this circuit, IVR is a relevant factor, but it cannot be considered an enrollment factor. Let's think about that for just a minute, because the IVR is not a dispositive factor. What about the cases that have discussed in this circuit, the debtor's voluntary decisions or decisions that the debtor makes that reduce their income? Should that be a factor that is also considered for the totality of the circumstances? The debtor's voluntary decision to reduce their income. Yes or no, it should be a factor. And isn't that what happens here? Yes or no. It's a self-imposed restriction on enrollment. So should that be dispositive? No, Your Honor. That is one factor in this court to consider. Your Honor, secondly, there is no question in this court as to whether the standard is the ability to pay off on the higher student loan or whether the debtor's ability to make payments on the student loan. As the excerpt said in Jefferson, they made it clear that the standard is sufficient income to make payments. Thirdly and lastly, there's also no question that if the debtor is enrolled in an IBR and has a $0 payment, that does not constitute as an ability to pay. As again, Judge Shodin confirmed and stated that this court does not interpret Jefferson's standard proposition that a $0 payment constitutes an ability to pay. And again, nor did the bankruptcy court make its decision that Ms. Kim, in this case, should make a $0 payment in the future and therefore she should not be able to discharge her student loan. Lastly, even if there was a valid argument that these questions were open, and this court determines that there is no question as to the alignment of any of those three issues, in this case, it is clear that under the totality of circumstances Ms. Kim should not have her student loan discharged. In your mind, did the bankruptcy court prepare any calculation of the present expense? What were the financial circumstances of Ms. Kim's compensation? No, Your Honor. I do not. I like language that was stated in the P.O. It's 262-F375 on the left side of your name, Jefferson, in the center of the page. It says, provided to be clearly erroneous, it must strike the court as the world just may be wrongly wrong. It must strike the court as wrong in the force of a five-year-old unrefrigerated fish. In this case, there is no fish in the refrigerator. Your Honor, this is a fairly good question. My question is, the counsel pointed out specific expenses that the agency has to account for. Is that correct statement or erroneous? Your Honor, I do not believe that. It is erroneous. I do not believe. You go to the standard of review, which is, again, how rigorous the standard is for clearly erroneous. And there's also standards in the case of all the state with different interpretations before it was given evidence. In this case, there are multiple interpretations as to the debtor's expenses. For example, the debtor testified in a cross-examination that the monthly free expenses for daycare were $200. On read and read, it should testify that it's between $300 and $400. On the debt to tax returns, it equals the monthly expense of $250. So you have four different numbers, four different interpretations. The judge took the fatalities of all the evidence that was in court. He made a determination as to the expenses for transportation. In the debtor's budget, the debtor was $150 for transportation costs. And in the debtor's tax return, the debtor was an amount of $2,948, or $240. There's all different interpretations that can be made from these expenses. And again, there are multiple interpretations before it was given evidence. And Judge Serkian, as I stated earlier, I do believe there's a double debt in this case. At trial, Ms. Kim admitted that her and her daughter eat some of the food that they buy for the daycare. So she has food expenses in her budget of $450 per month. And then she has food expenses for daycare somewhere around $3,000. Would that same analysis apply to the cable, the Wi-Fi, and the cell phone? Your Honor, I think you stated it perfectly when you questioned Ms. Forster. There is multiple interpretations. Because yes, she did testify during trial that she has a $150 cell phone, $150 cable during the bill. And that would be $300 per month. But again, as you stated, it's not in the budget. And in her tax return, it is the, I forget the word you used, but it's, you know, it was $905 per year for cable and internet. It's $999 for phone. But my point is, that's not all the food just for the daycare. It's all the debt, like the food, and the money. Yes, Your Honor. Yes, Your Honor. If your court has any more questions Ms. Calculation, I'll turn it over to you, Your Honor. Your Honor, for the first main argument, the main issue of the debt arrest is IBR. Again, there is no open question as to whether or not an IBR is given a disposable effect. Again, I think you stated it in the firm. It is a factor that cannot be considered the only factor.  that say that. There is no case in the excerpt no bankruptcy case I have found that says, if you are involved in an IBR, you cannot have it destroyed. The evidence is that if you have the ability to make a student loan payment and maintain a minimal standard of living, then it should not be destroyed. That is not a disposable factor. That is taking into account how much income a debtor has. That is taking into account how much expenses a debtor has so they can maintain a minimum standard of living. Nor did the bankruptcy court give a disposable effect to that factor. The bankruptcy court does not make thorough legalities of the student's debt. This debtor is young. She is 36 years old. She is an employer. That is shown by her past employment, where she is an R-Res making $45,000 a year, plus bonuses, plus annual ratings, where she is able to make a $350 payment every month to her student. In the future, this debtor, if she does not have her self-imposed restrictions, she can maintain a minimum standard of living. The only factor today that says her student loan should be discharged is her current expenses. That is due to her self-imposed self-imposed restrictions. And that is the big circuit. It is clearly set up just for simple accountants and other cases. A self-imposed restriction is not equal to an imposed one. So even if the bankruptcy court there in its calculation of the present, if we look at both her past performance and her likely future performances, she doesn't have self-imposed. That is correct, Your Honor. She has to be able to pay $4,000 a year. That is correct, Your Honor. And again, in the firm, I believe it should be stated that this court can affirm on any valid basis on the record of the court. Your Honor, as to whether the standard is the debtor's ability to make payments and not the entire student loan debt, again, if the question is for, as Jefferson has said, if he has sufficient income to make payments, then that is the standard. Are you aware of any cases that support the proposition of the debtor's circumstances or some of the tests in the status of a loan or a student loan to resolve the entire loan in any way? Your Honor, I do believe the debtor has cited two cases in local courts that talk about that. And again, the external objectives of those dates is sufficient income to make payments on the student loan debt. But that's not a student loan debt. It's quite large compared to, you know, what it needs to be to pay. And, you know, I'm trying to recall the cases which were cited. I think one may have been not necessarily what they talk about on the debt side of $200,000 when I may be misstating the exact amount. But that's not the case we have here. So can we take that into account in the debt side of something? Your Honor, I think that the rules are in favor of the debtor's support. She should have it. She has a higher likely chance of not only just making payments but paying off the entire debt for her client. If she's on an IBR, if she has a 25-year IBR, she should be able to pay this off. If she makes a decision to work full-time and maximize her income, even if she's not an IBR, she has a good chance to pay this off. Does the record reflect what the amount of the IBR payment would need to be for her to pay off within the 25 years? Your Honor, there was evidence at trial that the debtor was aware that the Department of Education had offered her to make a $30 a month payment. Why? In our positions that the debtor indicated that she could make that payment. Period. That was my exact question. If the debtor had unlimited resources, which I guess would disqualify her from an IBR, what's the amount that would be required to pay off a loan over a 25-year period? I'm sorry, under an IBR, or just in general? Just in general. Is there any record that would let us do that? Your Honor, I'm not aware other than the fact that she was making a $350 payment while she was working part-time. So, legally, that's the payment that the debtor said that's what she was making. She was making a $350 payment for the life of the loan and the loan would be paid off. As to the third potential issue on the bill, whether or not the $0 payment constitutes an ability to pay, again, it was confirmed that it should be the same. We do not interpret this panel, do not interpret this panel as a stand-alone proposition that a $0 payment equals an ability to pay. And again, the mechanism in court did not give any conclusive effect to the fact that she was currently on the payroll. Thank you. If y'all have any other questions, we'll take them. Mr. Solzer, attorney at the DA, that's right. Is it an undisputed fact that the debtor was making the $350 payment before moving into the other part, or while working in the bank that she  the $350 payment? It is. Remember that's in the testimony and it's also in the court's opinion. She was making payments in excess of $300 for several years. She paid several million dollars on the debt until she lost her job. Well, she quit until she ceased working. Judge Nail, one thing I can't tell you about because it is in the record, the interest on this debt is $250 per month. Now, nine months later, the debt is $55. It's just mathematics. The interest rate is 5.7. So right now it reaches $60,000 in early 2020. It will cost her $285 a month just to pay the interest. The record will show she has not the ability even to keep up the interest. This debt is depressed. What difference does that make as long as she's making  money?  Nail, I would also point out the purpose of OP 23 AA, which is to prevent resumed abuses. One out of a thousand debt withdrawals are student loans. The other purpose is the financial integrity of the student  loan. The account purges this form to clarify that statement. Thank